IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GURPREET SINGH,
   *Appellant*,

   *v.*

RELIABLE ROADSIDE SERVICES,
INC.

   *Appellee*.

Civil Action No. ELH-25-1858

## MEMORANDUM OPINION

This matter concerns a Chapter 11 bankruptcy proceeding filed by Reliable Roadside

Services, Inc. ("Debtor" or "Reliable"), a towing company. *See* ECF 4-1. In connection with the

bankruptcy proceeding, Gurpreet Singh, a general, unsecured creditor ("GUC" or "Creditor") of

Reliable, filed two motions to dismiss. In both motions, he urged dismissal of Reliable's Chapter

11 proceeding because of alleged inaccuracies in Reliable's schedules, the untimely filing of

monthly operating reports ("MORs"), and an unfair and inequitable Subchapter V Plan. *See* ECF

6 at 5–6.[1] The Bankruptcy Court (Rice, C. J.) conducted hearings on both of Singh's motions and

denied them.

---

[1] In 2019, Congress passed Subchapter V in the Small Business Reorganization Act
("SBRA") to streamline the reorganization process for small business debtors. *See* 11 U.S.C.
§ 1181 *et seq*. Under the SBRA, a "small business debtor" is an individual, corporation, or
partnership engaged in a commercial or business activity with an aggregate debt of less than $2
million when the petition is filed. 11 U.S.C. § 101(51D). Of relevance here, "Subchapter V allows
a debtor to confirm a plan non-consensually under § 1191(b), which departs from the Code's
inflexible priority scheme." *In re 2 Monkey Trading, LLC*, 142 F.4th 1323, 1329 (11th Cir. 2025).

During the second hearing, the Bankruptcy Court also confirmed Reliable's Chapter 11, Subchapter V Plan (the "Plan"). ECF 9-1 at 100. It provided that GUCs, like Singh, would be paid "a pro-rata share of all actual disposable income of the Debtor." *Id.*

Thereafter, Singh noted an appeal to this Court. ECF 6 ("Appeal"). He also filed "Brief of the Appellant," pursuant to 28 U.S.C. § 158(a). *Id.* In his Appeal, Singh challenges the Bankruptcy Court's denial of his second motion to dismiss and confirmation of Reliable's Plan. As discussed, *infra*, Singh failed to file the required Appendix with his brief.

Reliable opposes the Appeal. ECF 9 ("Opposition"). The Opposition is supported by exhibits in an Appendix, consisting of the transcript from the Bankruptcy Court's hearing on May 19, 2025 (ECF 9-1 at 2–89); Reliable's Plan (ECF 9-1 at 90–112); and the Bankruptcy Court's Order Confirming Reliable's Plan. ECF 9-1 at 113–118 ("Confirmation Order"). Singh has replied. ECF 10 ("Reply").

The record was transmitted to this Court and is docketed at ECF 4. It contains 244 exhibits. *See* ECF 4-1 to ECF 4-246. Notably, in his brief, Singh includes quotes from the hearing transcript of January 13, 2025. But, he did not append the transcript to his brief. *See* ECF 6 at 5–6. Nor did Reliable. *See* ECF 9. And, the hearing transcript was not among the 244 exhibits that appellant designated for the record on appeal. *See* ECF 4-1 to ECF 4-244. Therefore, on March 30, 2026, the Court issued an Order directing Singh to file the transcript from the hearing. *See* ECF 11. Singh did so on April 3, 2026. *See* ECF 12.

Further, Singh failed to provide the Court with an Appendix at all. *See* ECF 6. Therefore, in the Order on March 30, 2026, the Court noted Singh's failure to comply with Federal Rule of Bankruptcy Procedure 8018(b)(1), which provides, in part, that "the appellant must serve and file with its principal brief an appendix containing excerpts from the record." Fed. R. Bankr. Proc.

8018(b)(1); *see* ECF 11.  The Court provided the parties with the opportunity to address the significance of appellant's failure to provide the required Appendix, due by April 10, 2026.  ECF 11.  Neither party did so within the prescribed time period.  *See* Docket.

No hearing is necessary to resolve the Appeal.  *See* Local Rule 105.6.  For the reasons that follow, I shall affirm the Bankruptcy Court.

## I.    Factual and Procedural Background

Reliable provides towing services in Maryland.  ECF 4-212 at 9.  On July 9, 2024, Reliable filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.  *See* ECF 4-1.  The bankruptcy filing was precipitated by a judgment of $393,400 entered against Reliable in the Circuit Court of Maryland for Anne Arundel County in favor of Singh.  ECF 4-212 at 9.[2]  Accordingly, Singh is a GUC of Reliable.

On December 9, 2024, Singh moved to dismiss Reliable's case.  ECF 4-98 ("First Motion").  He alleged that dismissal was appropriate because "[t]he Debtor has made numerous false statements and/or omissions in its schedules as it pertains to its assets, income, expenses, and the Statement of Financial Affairs," and claimed that all of the Debtor's "monthly operating reports (the 'MOR') filed to date were filed late and are incomplete."  ECF 4-98 at 3, 7.  Reliable filed its Opposition to the First Motion on December 31, 2024.  *See* ECF 4-117.

The parties appeared before the Bankruptcy Court on January 13, 2025, to argue the First Motion.   Rajpaul Singh, a fifty percent owner of Reliable (ECF 9-1 at 15), testified at that hearing.  ECF 12 at 10–37.[3]  Regarding the untimely MORs, Rajpaul stated: "'I never done this before. So

---

[2] Following two years of litigation, Singh obtained a judgment against Reliable for breach of contract and tortious interference with prospective economic advantage.  ECF 9-1 at 35–36.

[3] Neither side clarifies whether Rajpaul Singh is related to Gurpreet Singh.  To avoid confusion, throughout this Memorandum Opinion, I shall refer to Rajpaul Singh as "Rajpaul" and

this is something for me, it's new.'"  ECF 6 at 6 (quoting ECF 12 at 32).  Rajpaul continued: "I have to take my time to get [the MORs] done because this is just a regular company.  We live by day-by-day, so it's not like I have something, software, I go up on it and type and everything print out."  ECF 12 at 32.

Reliable's counsel also emphasized that Reliable is "not a very sophisticated business" and lacked the software necessary to "allow[] the processing of the information that needs to be incorporated into the MORs [that] would make the process easier."  *Id.* at 5.  Moreover, Reliable's counsel assured the Court that as of the date of the hearing, "[t]he MORs are now current . . . ."  *Id.* at 6.

Judge Rice observed that "dismissing or converting a case or appointing a Chapter 11 Trustee is extraordinary relief."  *Id.* at 41.  Singh's counsel responded: "It is.  I concede that."  *Id.* But, Singh's lawyer argued that the Debtor had a "cavalier attitude in regards to filing the MORs . . . ."  *Id.* at 44.  And, he argued:  "There are bankruptcy judges throughout the country . . . that have said that . . . [it] is a basis for dismissing or converting a case."  *Id.*  Judge Rice interjected: "I'm probably one of them."  *Id.*

Hugh Bernstein, from the Office of the United States Trustee, took no position with regard to Singh's First Motion.  *Id.* at 8, 49.  And, Lawrence Katz, as the Subchapter V Trustee, said: "I don't personally believe that the movement [sic] has met its burden of showing cause sufficient to justify conversion or dismissal of this case."  *Id.* at 47.  He continued, *id.* at 48: "I still believe that

---

I shall refer to Gurpreet Singh as "Singh."

Moreover, the proper spelling of Rajpaul's name is unclear.  Both Singh and the court reporter use the spelling of "Rajpal," although Rajpaul was not asked to spell his name.  Reliable refers to him as "Rajpaul."  I shall use the spelling of "Rajpaul," in accordance with Reliable's Opposition.  *See* ECF 9.

it is appropriate to let the debtor put a plan on the table.  And the real issue is going to be whether or not that plan is confirmable.  And there's no reason to stop these proceedings dead in their tracks at this juncture.  So I, for that reason, Your Honor, I do not agree with the movement [sic]."

The Bankruptcy Court concluded that there was no cause to dismiss or convert Reliable's bankruptcy case.  *Id.* at 50; *see* ECF 6 at 6.  It stated, *id.*: "As a reason for that finding, I adopt Mr. Katz's statement as Subchapter V Trustee in this case as to why there isn't cause."  Accordingly, on January 28, 2025, the Bankruptcy Court denied Singh's First Motion.  ECF 4-170.

Approximately three months later, on April 25, 2025, Singh filed a second motion to dismiss (ECF 4-198, the "Second Motion").  He "alleged that during the 10 months that the Debtor was in bankruptcy that on only two occasions the Debtor managed to file a timely MOR."  ECF 6 at 6.  Further, Singh claimed "that a plan that provides for 1 percent distribution to its creditors is not worthy of being afforded chapter 11 protection, and that the plan was not 'fair and equitable' and thus could not be confirmed."  *Id*.  Reliable opposed the Second Motion, pointing out that, since the filing of Singh's First Motion, only two out of four of Reliable's MORs had been untimely filed.  *Id.*; ECF 9 at 5–6; *see* ECF 4-204 at 2.  Specifically, Reliable's MOR for January 2025 was filed 28 days late and its MOR for March 2025 was filed 18 days late.  ECF 4-204 at 2.  However, Reliable's December 2024 and February 2025 MORs were timely filed.  *Id.*

Reliable filed its Plan on May 18, 2025.  ECF 9-1 at 90–112.  According to Reliable, "[t]he Plan essentially has two sets of claims.  The first set are the secured claims of the US Small Business Administration, JP Morgan Chase, and Toyota Industries Commercial Finance, and the Plan provides that these secured claims will be paid in accordance with the loan terms."  ECF 9 at 5 (citing ECF 9-1 at 99–100).  "The second set of claims are the General, Unsecured Creditors ('GUC') of which Singh is one.  The Plan provides that GUCs will be paid 'a pro-rata share of all

***actual disposable income*** of the Debtor.'"  ECF 9 at 5 (quoting ECF 9-1 at 100) (emphasis added by Reliable in ECF 9).

On May 19, 2025, the Bankruptcy Court held a hearing on the Second Motion, as well as a hearing on confirmation of the Plan.  ECF 6 at 7; ECF 9 at 6; ECF 9-1 at 3.  Katz and Bernstein also attended.  ECF 9-1 at 5–6.

At the hearing, Singh argued that Reliable's Chapter 11 case should be dismissed due to Reliable's failure to timely file MORs.  ECF 6 at 7.  Rajpaul testified at the hearing.  ECF 9-1 at 15–62.  Singh's counsel questioned Rajpaul as to why only two out of ten MORs were filed on time with the Bankruptcy Court.  *Id.* at 57.  Rajpaul explained: "This is a small company, so I mean, we try to catch up whatever we can.  It's not like I'm sitting in office twenty-four hours, you know, doing the paperwork.  So whenever I get a chance, we fill it out, we send it out to my lawyer and that's it."  *Id*.  He continued: "We try to file it, you know, as soon as the statements comes in or you get an email that monthly statements are available, you know. Put them together it's take [sic] time."  *Id.* at 58.

In response to Singh's MOR argument, Judge Rice said: "Mr. Brandt, I'm not going to deny confirmation based upon this MOR argument. Let's get to some real arguments . . . ."  *Id.* at 70.

Singh also argued that the court should not confirm the Plan because the Debtor's projected disposable income was inaccurate.  ECF 6 at 13–14; ECF 9 at 6.  Singh believed that Reliable sought to reduce its income so as to reduce the amount that it would have to pay to GUCs, per the terms of the Plan.  ECF 6 at 15; ECF 9 at 6.  According to Reliable, Singh contended that "this was the case because the Debtor's projected disposable income was based on gross income that was much lower after the case was filed than the gross revenue of the Debtor prior to the case."  ECF 9 at 6.

With respect to the decrease in Reliable's disposable income, Rajpaul explained: "Because the [sic] first of all, we had a lawsuit going on paying the lawyers, and the business went down. And you know, we was operating through 2023. We basically had a six, seven truck [sic] was operating. And since 2024, we only ended up operating four." ECF 9-1 at 16. He also stated: "Business has been slow. You know, it's on and off. We can't tell tomorrow how many cars are going to break down. If thirty break down ten tomorrow [sic], it's not going to be even two cars on the road. We still have the expenses coming in. We still got to make the truck payments." *Id.* at 41.

At the hearing, Katz, Subchapter V Trustee, and Bernstein, U.S. Trustee, confirmed that neither objected to the Plan. ECF 9-1 at 78–79. Katz emphasized that the Plan provided for Reliable to pay its GUCs "the actual net disposable income" and averred that "while [Reliable's] projections may be off a little bit . . . at the end of every month, whatever is left over is going to the creditors, the class 4 creditors, after classes 1 through 3 are paid their fixed amounts." *Id.* at 77. And, as Bernstein succinctly put it, "if there was a saving grace to this plan, it was the actual disposable income as opposed to the projected." *Id.* at 78.

The Bankruptcy Court then asked Singh's counsel why the Plan's provision of "actual, not projected disposable income" did not assuage Singh's concerns regarding Reliable's allegedly inaccurate projections. *Id.* at 83. Singh's counsel answered, *id.*:

> I will be totally honest, which my father warned me not to be, but despite his advice, I'll be totally honest and say I missed that. Meaning I was under the impression that this was a classic projected plan, and I'm projecting that you're going to get one percent and that's that. And it honestly was not crystal clear to me that if -- clearly, if the confirmation order says, notwithstanding the projection, I am prepared to pay out my actual disposable income to any and all unsecured creditors, that certainly bolsters and favors the debtor and makes my client happier.

Singh's counsel also requested a continuation of Reliable's reporting obligations to provide confirmation of its revenue and expenses. *Id.* at 84. In response to this request, the Bankruptcy

7

Court stated that the Confirmation Order would provide that the Debtor would file quarterly reports showing the actual disposable income of the Debtor and the payments to GUCs would be the actual disposable income for that quarter. ECF 9-1 at 86.

On May 29, 2025, the Bankruptcy Court issued an order titled "Order Confirming Debtor's Third Amended Chapter 11, Subchapter V Plan As A Non-Consensual Plan." ECF 9-1 at 113–118 ("Confirmation Order"). Of import, the Confirmation Order provides, in part, *id.* at 117:

> For the avoidance of doubt, the Disposable Income to be paid to, and distributed by, the Trustee shall be the actual disposable income of the Reorganized Debtor for the prior calendar quarter, including all amounts by which such Disposable Income exceeds the disposable income projections reflected for that quarter on the Debtor's Cash Flow Statement . . . .

Also on May 29, 2025, the Bankruptcy Court issued an Order denying the Second Motion. ECF 4-223 ("Denial Order"). The Denial Order stated that the Second Motion is "Moot by reason of confirmation of the Debtor's Chapter 11 Plan." *Id.*

On June 10, 2025, Singh filed a Notice of Appeal with this Court, challenging the Bankruptcy Court's denial of his Second Motion and confirmation of Reliable's Plan. ECF 1.

Additional facts are included, *infra.*

## II. Standard of Review

Section 158 (a) of 28 U.S.C. § 158(a) authorizes appeals from the bankruptcy court to the district court. *See R&J Contractor Servs., LLC v. Vancamp*, 652 B.R. 237, 239, 241 (D. Md. 2023). In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . ."); *see also Kelly v. Naples Prop. Holding Co., LLC*, 671 B.R. 432, 445 (D. Md. 2025) (citing 28 U.S.C. § 158(c)(2)); *In re*

*Howes*, 563 B.R. 794, 804 (D. Md. 2016); *Conrad v. Schlossberg*, 555 B.R. 514, 515–16 (D. Md. 2016).

The court "review[s] the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and any discretionary decisions for abuse of discretion." *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020); *see Smith v. Devine*, 126 F.4th 331, 341 (4th Cir. 2025); *Kelly*, 671 B.R. at 446; *see also Janvey v. Romero*, 883 F.3d 406, 410 (4th Cir. 2018) (stating that courts "review the bankruptcy court's denial of a motion to dismiss for abuse of discretion . . . .") (citing *In re Jenkins*, 784 F.3d 230, 234 (4th Cir. 2015); *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013)). A bankruptcy court's order confirming a Chapter 11 plan is also reviewed for abuse of discretion. *In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137, 145 (B.A.P. 9th Cir. 2022) (citing *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013)); *In re Kirwan Offs. S.a.r.l.*, 592 B.R. 489, 500 (S.D.N.Y. 2018), *aff'd sub nom. In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99 (2d Cir. 2019). The parties here agree that the standard of review of the appeal is "abuse of discretion." ECF 6 at 4; ECF 9 at 4.

A bankruptcy court "abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (internal citations omitted). The Fourth Circuit has said that a court abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012). "However, even if the bankruptcy court applies the proper legal principles to supported facts, the district court may reverse if it holds 'a definite and firm conviction that the [bankruptcy court] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Yankah v.*

*Yankah (In re Yankah)*, 514 B.R. 159, 163–64 (E.D. Va. 2014) (alteration in original) (quoting *Westberry*, 178 F.3d at 261).

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985). Remand is necessary where "the bankruptcy court's failure to make sufficient factual findings in support of its legal conclusions does not allow for meaningful appellate review[.]" *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 709 (4th Cir. 2011); *see also In re Spangler*, 56 B.R. 990, 991 (D. Md. 1986) ("If the findings of the Bankruptcy Court are made in conclusory fashion and the record below does not permit meaningful review, a remand by the district court for further proceedings may be in order.").

### III. Discussion

### A.

Singh declares: "This court has jurisdiction to hear this case under 28 U.S.C. Section 158(a)." ECF 6 at 4. Section 158(a) provides, in relevant part:

(a) The district courts of the United States shall have jurisdiction to hear appeals
    (1) from final judgments, orders, and decrees;
    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11
    increasing or reducing the time periods referred to in section 1121 of such title; and
    (3) with leave of the court, from other interlocutory orders and decrees[.]

Thus, "by statute, an appeal of right exists . . . from a final judgment . . . . " *In re Rood*, 426 B.R. 538, 546 (D. Md. 2010). Or, under § 158(a)(2), an interlocutory appeal may be filed as to a decree issued under Section 1121(d). Otherwise, under § 158(a)(3), an appeal from an interlocutory order "may lie only upon obtaining leave of the court." *In re Rood*, DKC-10-2651, 2010 WL 4923336, at *2 (D. Md. Nov. 29, 2010).

As noted, Singh seeks review of two of the Bankruptcy Court's orders. These are the Confirmation Order (ECF 9-1 at 113–118) and the Denial Order (ECF 4-223). *See* ECF 6 at 4.

The confirmation of a Chapter 11 plan constitutes a final judgment in bankruptcy proceedings. *Browning v. Levy,* 283 F.3d 761, 772 (6th Cir. 2002) (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir. 1992)); *see In re James River Coal Co.*, 360 B.R. 139, 188 (Bankr. E.D. Va. 2007).

But, as discussed below, the Bankruptcy Court's denial of the Second Motion is not a final judgment. As a result, § 158(a)(1) affords no grounds for appeal at this time. And, § 158(a)(2) is inapposite here, because the proposed appeal does not concern a decision of the Bankruptcy Court involving 11 U.S.C. § 1121(d), as required by 28 U.S.C. § 158(a)(2).

Because the Denial Order denying the Second Motion is interlocutory, Singh may appeal only upon obtaining leave of the court. *See* 28 U.S.C. § 158(a)(3). Therefore, Singh should have filed his appeal under 28 U.S.C. § 158(a)(3). *See In re Minh Vu Hoang*, DKC-11-3431, 2011 WL 6296839, at *1 (D. Md. Dec. 14, 2011); *In re Rood*, 2010 WL 4923336, at *4. But, Singh did not move for leave to appeal; instead, he filed a notice of appeal. *See* ECF 1.

**B.**

"As a general rule, a final judgment under 28 U.S.C. § 1291 is 'one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment.'" *In re Hebb*, 53 B.R. 1003, 1005 (D. Md. 1985) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see In re Rood*, 426 B.R. at 546. By contrast, an interlocutory order is "one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken to enable the court to adjudicate the cause on the merits." *In*

11

*re Hebb*, 53 B.R. at 1005.  *See* Black's Law Dictionary (12th ed. 2024) (defining "interlocutory" as "interim or temporary; not constituting a final resolution of the whole controversy").

To be sure, the concept of a final judgment in a bankruptcy proceeding is more forgiving than the standard applied in civil proceedings under 28 U.S.C. § 1291. In *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015), the Supreme Court said: "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor . . . . Accordingly, 'Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.'" (Citations omitted); *see Mort Ranta v. Gorman*, 721 F.3d 241, 246 (4th Cir. 2013) ("[T]he concept of finality in bankruptcy traditionally has been applied in a 'more pragmatic and less technical way' than in other situations.") (quoting *McDow v. Dudley*, 662 F.3d 284, 287 (4th Cir. 2011)); *In re Computer Learning Centers, Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (stating that orders in bankruptcy cases "'may be immediately appealed if they finally dispose of discrete disputes within the larger case'") (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (stating that in the bankruptcy context, the concept of finality "has traditionally been applied 'in a more pragmatic and less technical way . . . than in other situations'") (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)).

Judge Chasanow explained in *In re Rood*, 426 B.R. at 546-47 (quoting *In re Swyter*, 263 B.R. 742, 746 (E.D. Va. 2001)) (alterations added):

> [C]onsiderations unique to bankruptcy appeals, such as the protracted nature of the proceedings and the large number of interested parties, require a less rigorous application of the finality rule. *See* [*In re Saco Local Dev. Corp.*, 711 F.2d] at 443-48. Put differently, "[t]o avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts

might be considered interlocutory." [*Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 241 (4th Cir. 1987)] (quoting *In re Amatex Corp.*, 755 F.2d at 1039); *see also In re Mason*, 709 F.2d 1313, 1316 (9th Cir. 1983) (holding that finality must be determined "in light of the unique nature of bankruptcy procedure and not with blind adherence to the rules of finality"). Thus, for example, the decision to appoint a trustee or an examiner is a final appealable order because to hold otherwise would delay review of the decision until "a final plan is approved" and "may well cause several years of hearings and negotiations to be wasted." *In re Amatex*, 755 F.2d at 1040 (cited with approval in *Dalkon Shield*, 828 F.2d at 241). Furthermore, the decision to set aside the sale of a bankruptcy asset and to reopen proceedings is also final and appealable because it "finally determines" a creditor's position vis-a-vis the debtor and places any resale of assets in considerable doubt. *In re Irvin*, 950 F.2d 1318, 1319 (7th Cir. 1991); *see In re Gould*, 977 F.2d 1038, 1041 (7th Cir. 1992). In sum, these cases stand for the proposition that an order is final and appealable if it (i) finally determines or seriously affects a party's substantive rights, or (ii) will cause irreparable harm to the losing party or waste judicial resources if the appeal is deferred until the conclusion of the bankruptcy case. *See In re Mason*, 709 F.2d at 1316 (citing R. Levin, Bankruptcy Appeals, 59 N.C. L. Rev. 967, 985-86 & n.140).

The finality of a bankruptcy order is determined by whether it "alters the status quo and fixes the rights and obligations of the parties," as opposed to when the "parties' rights and obligations remain unsettled." *Bullard*, 575 U.S. at 502-03. In my view, the Bankruptcy Court's denial of Singh's Second Motion is not final.

In particular, the Bankruptcy Court's Denial Order did not determine any claims or rights of Singh. Nor did it dismiss the bankruptcy proceeding or otherwise dispose of any discrete disputes within the bankruptcy case. *In re Saco Local Dev. Corp.*, 711 F.2d at 444. Rather, it simply rejected Singh's arguments as to Reliable's failure to timely file MORs; Reliable's purported inability to demonstrate that it will make all payments under the Subchapter V plan; Reliable's alleged lack of good faith; and Reliable's failure to provide accurate disposable income projections. *See* ECF 4-198. In effect, the Denial Order allowed the Debtor's bankruptcy proceeding to continue as a Chapter 11 case. The rights and obligations of the parties and claimants remained the same.

13

Moreover, the Denial Order stated that the Second Motion was "[m]oot by reason of confirmation of the Debtor's Chapter 11 Plan." ECF 4-223. It is the Confirmation Order, and not the Denial Order, that altered the status quo and determined the rights and obligations of Reliable and Singh.

The Confirmation Order provided for Reliable's distributions for the five-year term of the Plan, ordered Reliable to file quarterly reports with bank statements, and confirmed the distributions to which Singh was entitled. ECF 9-1 at 113–118. In contrast, the Denial Order simply rejected Singh's argument that the untimely MORs constituted cause to dismiss the case.

This construction is in line with the reasoning of the Fourth Circuit in *McDow v. Dudley*, 662 F.3d 284 (4th Cir. 2011). There, the Court concluded that a bankruptcy court's order was final where it denied the U.S. Trustee's motion to dismiss a Chapter 7 bankruptcy case as abusive under 11 U.S.C. § 707(b). *Id.* at 290. The Court analyzed the language and congressional intent behind § 707(b) specifically and distinguished it from a motion to dismiss under § 1112(b). It explained, *id.* at 289–90 (emphasis added):

> These new provisions manifest a congressional policy to police all Chapter 7 cases for abuse at the outset of a Chapter 7 proceeding, and they raise pragmatic considerations that indicate that the denial of a § 707(b) motion to dismiss is different from the denial of other motions to dismiss, such as those filed under Federal Rule of Civil Procedure 12(b) or 11 U.S.C. § 1112(b)(1)-(4). Section 707(b) requires that the U.S. Trustee apply the means test to Chapter 7 cases within a short time frame and, if the means test creates a presumption of abuse, to file a motion to dismiss the case within another relatively short time frame. Because of these strict time periods, which indicate that the issue is a threshold matter, the motion to dismiss a Chapter 7 case as abusive cannot be filed at any other time during the bankruptcy proceedings. Moreover, the U.S. Trustee is directed to apply the statutory means test and, if a presumption of abuse is created, to file the motion to dismiss or explain his decision not to. *In contrast, under the dismissal provision in Chapter 11 proceedings, parties may bring an action to dismiss for "cause" under § 1112(b) throughout the bankruptcy proceedings, and the circumstances or events that constitute "cause" may arise at any time.*

14

Courts in other districts have found that a bankruptcy court's denial of a motion to dismiss is not a final order. *See In re Jartran, Inc.*, 886 F.2d 859, 863-64 (7th Cir. 1989) (concluding order denying motion to dismiss under § 1112(b) was not final, appealable order); *In re N. Bedford Dr. Corp.*, 778 F.2d 1374, 1377-79 (9th Cir. 1985) (same); *Off. Comm. of Asbestos Claimants v. Bestwall LLC*, RJC-19-00396, 2023 WL 7361075 (W.D.N.C. Nov. 7, 2023) (same); *Comm 2013 CCRE12 Crossing Mall Road, LLC v. Tara Retail Group, LLC*, IRK-17-0067, 2017 WL 2837015 (N.D. W. Va. June 30, 2017) (same). For the foregoing reasons, I find the same.

## C.

Because the Bankruptcy Court's Denial Order is interlocutory, Singh may only seek appellate review with leave of Court. *See* 28 U.S.C. § 158(a)(3). When seeking leave, an appellant must include with his notice of appeal a motion for leave to appeal that includes the facts necessary to understand the question presented, the question itself, the relief sought, the reasons why leave to appeal should be granted, and a copy of the interlocutory order at issue. Fed. R. Bankr. P. 8004(a), (b). Singh did not move for leave to appeal. If the appellant does not move for leave, the court may nonetheless order the appellant to file a motion for leave or treat the notice of appeal as a motion for leave and either grant or deny it. Fed. R. Bankr. P. 8004(d).

In *HeiTech Services, Inc. v. Rowe*, GJH-17-1319, 2017 WL 4838750, at *2 (D. Md. Oct. 24, 2017) (citations omitted), the court explained the applicable standard:

> When deciding whether to grant leave to appeal an interlocutory order or decree of a bankruptcy court, the district court may employ an analysis similar to that applied when certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b). Under this analysis, leave to file an interlocutory appeal should be granted only when 1) the order involves a controlling question of law, 2) as to which there is substantial ground for a difference of opinion, and 3) immediate appeal would materially advance the termination of the litigation.

(Quoting *In re Pawlak*, 520 B.R. 177, 182 (D. Md. 2014)); *see KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 78 (E.D. Va. 2000). Notably, all three elements must be met for

leave to be granted. *See In re Air Cargo, Inc.*, CCB-080587, 2008 WL 2415039, at *3 (D. Md. June 11, 2008); *KPMG Peat Marwick*, 250 B.R. at 79; *see also Coalition for Equity and Excellence in Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015).

A district court will not hear an interlocutory appeal when parties merely "'disagree as to a Bankruptcy Court's interlocutory order, but rather only where substantial ground for disagreement exists as to the controlling issues of law that informed the order.'" *In re Pawlak*, 520 B.R. at 184 (quoting *In re Air Cargo, Inc.*, 2008 WL 2415039, at *3); *see KPMG Peat Marwick*, 250 B.R. at 79. "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013).

### 1.  Controlling Question of Law

As indicated, the district court should grant leave for an interlocutory appeal when, among other things, the order in issue involves a controlling question of law.  Notably, "[a]n order involves a controlling question of law when reversal of the bankruptcy court's order would be dispositive of the case as either a legal or practical matter and determination of the issue on appeal will materially affect the outcome." *In re Minh Vu Hoang,* 2011 WL 6296839, at *2; *accord In re Rood*, 2010 WL 4923336, at *4; *In re Pawlak*, 520 B.R. at 183; *see also KPMG Peat Marwick*, 250 B.R. at 78 (stating that a controlling question of law is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes.") (citing *Fannin v. CSX Transp. Inc.*, 873 F.2d 1438 (table), 1989 WL 42583, at *5 (4th Cir. 1989)). "Factual determinations and appeals presenting a question of law and fact are not

16

appropriate for interlocutory review." *In re Pawlak*, 520 B.R. at 183 (quoting *In re ASC, Inc.*, 386 B.R. 187, 196 (E.D. Mich. 2008)).

Singh maintains that the Bankruptcy Court "committed reversible error" because it ignored "the standard promulgated by Congress [in 11 U.S.C. § 1112(b)(1)] that once 'cause' is established the only discretion left to the bankruptcy court is the determination of whether to dismiss or instead convert the case . . . ." ECF 6 at 12. In other words, under Singh's interpretation of § 1112(b), because Reliable did not timely file its MORs, cause existed, and thus the court was required to dismiss or convert the case.[4] "As a question of the correct interpretation of the Bankruptcy Code, this issue is one of law," not fact. *In re Pucci Shoes, Inc.*, 120 F.3d 38, 41 (4th Cir. 1997).

Further, "[a]n order involves a *controlling* question of law when either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *In re Travelstead,* 250 B.R. 862, 865–66 (D. Md. 2000) (emphasis added). Reversal on this issue would terminate the action because it would result in dismissal of Reliable's Chapter 11 proceeding. Thus, the first prong is satisfied.

### 2.  Substantial Disagreement as to a Controlling Question of Law

An interlocutory appeal is not warranted unless, *inter alia*, there is substantial ground for a difference of opinion as to a controlling question of law. However, this criterion is not satisfied when parties merely "disagree as to a Bankruptcy Court's interlocutory order," but there is no "substantial ground for disagreement . . . as to the controlling issues of law that informed the order." *In re Air Cargo, Inc.*, 2008 WL 2415039, at *3; *see also In re Pawlak*, 520 B.R. at 184.

---

[4] Singh did not argue in his Second Motion that Reliable's Chapter 11 case should be converted to a Chapter 7 case. *See* ECF 4-198. Therefore, I shall limit my review of the issues on appeal to whether the Bankruptcy Court improperly denied Singh's request to dismiss Reliable's case.

Of relevance here, "an interlocutory appeal will lie only if a difference of opinion exists *between courts* on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law." *KPMG Peat Marwick*, 250 B.R. at 83 (emphasis in original). The burden is on Singh, as the movant, to demonstrate the existence of a substantial disagreement. *See Lynn*, 953 F. Supp. 2d at 626 ("What matters is whether the movant has shown a substantial ground for differences of opinion among the *courts*.") (Emphasis in original).

Pursuant to 11 U.S.C. § 1112(b)(1), a bankruptcy "court shall convert a case under [Chapter 11] to a case under [C]hapter 7 or dismiss a case under [Chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Thus, the court must first determine whether "cause" exists to convert or dismiss a Chapter 11 bankruptcy case. *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994). Although the Bankruptcy Code does not explicitly define "cause," § 1112(b)(4) provides a non-exhaustive "list of [sixteen] enumerated examples of facts that would constitute cause." *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 711 (Bankr. D. Md. 2011).

Relevant here, one of the examples of "cause" is the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F). Moreover, a single "cause" is sufficient to warrant a Chapter 11 dismissal for cause. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013) (citing *Reagan v. Wetzel (In re Reagan),* 403 B.R. 614, 621 (B.A.P. 8th Cir. 2009)); *see also Hoover v. Harrington (In re Hoover),* 828 F.3d 5, 9 (1st Cir. 2016) (where bankruptcy court found three bases for cause, appellate court only reached the first because "one cause is enough").

Arguing that the Bankruptcy Court abused its discretion when it refused to dismiss or convert Reliable's case, Singh contends that the use of the word "shall" in 11 U.S.C. § 1112(b) imposes upon the court "an obligation impervious to judicial discretion." ECF 6 at 9 (citation omitted). But, it is well established that bankruptcy courts possess wide discretion in determining whether cause exists in the first place to warrant dismissal or conversion of a case to Chapter 7 under 11 U.S.C. § 1112(b). *In re Kholyavka*, DWS-08-10653, 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (citing H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)); *see In re Van Gompel*, 632 B.R. 730, 735 (Bankr. D.S.C. 2021)*; In re Demeza*, 567 B.R. 473, 477 (Bankr. M.D. Pa. 2017); *In re Davis-Rodwell TMC LLC*, RDD-12-04499-8, 2013 WL 6134532, at *3 (Bankr. E.D.N.C. Nov. 21, 2013); *In re Prods. Int. Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008); *In re Tornheim*, 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995)*.* Singh asserts in his Reply (ECF 10 at 3): "'The non-filing of required reports must be unexcused, therefore indicating that the court has discretion to determine whether the debtor's failure rises to the level of cause.'" (Quoting *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. at 716) (internal quotation marks omitted).

Singh disagrees with the Bankruptcy Court's finding that cause did not exist. To bolster his position, Singh cites several cases in which courts concluded that the untimely filing of MORs was sufficient to constitute cause. ECF 6 at 8. According to Singh, these cases indicate that the Bankruptcy Court erred in finding no cause here. *Id.* But, as Reliable points out, each of the cases on which Singh relies is factually inapposite. The cases do not establish a genuine division among courts as to whether dismissal of Reliable's case was warranted or compelled based on the untimely filing of MORs.

For example, in *In re DRTMG, LLC*, 667 B.R. 862 (Bankr. S.D. Ohio 2025), the court found that cause existed, reasoning that "the Debtor's MORs [were] untimely, incomplete, and

19

inaccurate, [and] the Debtor did not take steps to correct the deficiencies and make accurate disclosures despite receiving several written notifications from the U.S. Trustee and the Trustee." *Id*. at 873–74. Moreover, the court wrote: "A debtor who comes to a hearing on a motion to dismiss or convert without ensuring that all of the monthly operating reports then due have been filed sends a very loud message to the court that it is either unwilling or unable to perform the most basic obligations of a debtor-in-possession." *Id.* at 874.

Here, Reliable filed all of its MORs prior to the motion to dismiss hearings, and Singh does not claim otherwise. Further, although Singh alleges that Reliable's MORs contained inaccurate disposable income calculations, he does not contend that the MORs were incomplete. ECF 6 at 10. Nor is there any indication in the record that Reliable received written notifications from the U.S. Trustee or the Subchapter V Trustee that it repeatedly ignored.

Similarly, in *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. at 716, the U.S. Trustee alleged that the debtor failed to timely file its MORs and that the reports that were filed were deficient. The court concluded: "Herein, the [U.S. Trustee] has demonstrated that Landmark's shirking of its duties as debtor has created cause for dismissal under this subsection. The court notes that two days prior to the hearing upon the instant Motions, Landmark filed catch-up monthly operating reports for October, November and December of 2010. Such filing does not satisfactorily explain or excuse Landmark's failure to satisfy its duties as a chapter 11 debtor." *Id.* at 716–17.

It is true that Reliable's March 2025 MOR was filed on April 30, 2025, eighteen days after the deadline imposed by the Bankruptcy Court. ECF 9 at 6. But, the hearing on the Second Motion did not occur until May 19, 2025, thus providing Singh with nineteen days to prepare for the hearing with the most updated MOR. *Id.* Moreover, at the hearing, Rajpaul provided an explanation as to why the MORs were untimely. ECF 9-1 at 57. Although Singh may find

20

Rajpaul's excuses insufficient, Reliable's conduct still does not rise to the level of the conduct of Landmark.

And, *In re RainTree Healthcare of Forsyth LLC,* BAK-17-51237, 2018 WL 770367 (Bankr. M.D.N.C.), the debtor did not file *any* MORs. *Id.* at \*9. Nor did the debtor file its schedules on time. *Id.* Finding that cause existed, the court said: "When considering all these failures together, along with the circumstances and basis for the filing of this case, Debtor's behavior indicates a flouting of the requirements of the Bankruptcy Code, applicable rules, and this Court's orders and a lack of postpetition good faith and diligence in seeking relief from this Court that rises to the level of 'cause' to dismiss or convert the case as contemplated by section 1112(b)(4)(F)." *Id.* at \*10.

In my view, Reliable's conduct does not constitute a "flouting of the requirements of the Bankruptcy Code." To be sure, Reliable concedes that it belatedly filed several MORs. ECF 9 at 5–6. But, unlike in *In re RainTree*, Reliable filed the required MORs. And, despite Singh's claim that Reliable used inaccurate figures for its disposable income projections, Reliable's conduct does not constitute "a lack of postpetition good faith or diligence."

Whether cause exists to trigger the requirement to dismiss or convert a case rests within the discretion of the Bankruptcy Court. Singh has not demonstrated that a genuine split of authority exists among courts on this controlling question of law.

Accordingly, Singh has not satisfied his burden on this prong of the analysis. This failure renders consideration of the third criterion unnecessary — namely, whether an immediate appeal would materially advance the termination of the litigation or otherwise simplify the trial. *Coalition for Equity and Excellence*, 2015 WL 4040425, at \*6. The sole remaining question, therefore, is whether Judge Rice abused his discretion in confirming Reliable's Plan.

**D.**

Singh contends that the Bankruptcy Court abused its discretion by issuing the Confirmation Order.[5] Section 1191 contains the "essential elements of confirmation of a Subchapter V plan." *In re U.S.A. Parts Supply*, 630 B.R. 487, 492 (Bankr. N.D.W. Va. 2021). Section 1191(b) provides for the non-consensual confirmation of a Chapter 11 plan, and provides that "the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).

Section 1191(c)(2) of 11 U.S.C. provides two options to satisfy the requirement that a plan be "fair and equitable." It states:

> (2) As of the effective date of the plan—
>
>> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>>
>> (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

Moreover, the debtor must be able to make all payments under the plan, or there must be a reasonable likelihood that the debtor will be able to make all payments under the plan. 11 U.S.C. § 1191(c)(3)(A)(i)-(ii). Additionally, the plan must provide "appropriate remedies, which may

---

[5] Singh's Reply is entirely silent on his arguments concerning the Confirmation Order. *See* ECF 10. Instead, Singh dedicates his Reply to his contention that the Bankruptcy Court abused its discretion in denying his Second Motion. *Id.*

22

include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3)(B).

Here, the Creditor maintains that the Plan is neither fair nor equitable because "Section 1191(c) requires the debtor to devote all 'projected disposable income' to plan payments for three to five years" and those projections must be credible. ECF 6 at 12 (citing *In re Premier Glass Services, LLC*, 664 B.R. 465 (Bankr. N.D. Ill. 2024)). But, according to Singh, Reliable's income projections were unreliable and inaccurate. ECF 6 at 15. Indeed, Singh accuses Reliable of "fabricating that number." *Id.* Thus, Singh opines, through a flurry of rhetorical questions, that the Bankruptcy Court abused its discretion by confirming Reliable's Plan. *Id.* at 15–17. [6]

Singh's qualms with the Bankruptcy Court's decision appear to lie in the court's "implicit[] agree[ment] with the Debtor that $40,000 per month in year one through two of its projection was an accurate income projection[.]" According to Singh, "during the three years preceding the filing of the Debtor's plan the Debtor [sic] average yearly revenue was roughly $686,000 per year" or "about $57,000 per month." ECF 6 at 13–14. In Singh's view, this $17,000 discrepancy warranted denial of the Plan because it demonstrates that Reliable's projections were inaccurate and unsupported by the evidence. *Id.* Singh avers that "the income generated by the Debtor during the

---

[6] For example, Singh asks: "[D]id the bankruptcy court abuse its discretion by implicitly agreeing with the Debtor that $40,000 per month in year one through two of its projection was an accurate income projection? Did the evidence support such finding?" (ECF 6 at 14); "[D]id the bankruptcy court have a rational basis to conclude, based on the evidence presented, that the Debtor did indeed have $23,000 per month in payroll expenses?" (*id.* at 16); "Why did the bankruptcy court draw this conclusion?" (*id.*); "What evidence did the court rely on to draw its conclusion that the plan was 'fair and equitable?' Did the evidence presented by Debtor not run to the contrary?" (*id.*); "When a debtor proposes a plan that projects revenue that is likely $17,000 less than what the debtor actually can and has made in the past, can a plan be deemed 'fair and equitable'?" (*id.*).

years preceding the bankruptcy filing are a far better indicator of the true income of the Debtor as opposed to some made up projections based on recent MORs filed with the court." *Id.* at 15.

But, during the hearing on May 19, 2025, Rajpaul testified as to the accuracy of Reliable's disposable income projections. ECF 9-1 at 32–33. He also explained, with respect to Reliable's significant reduction in revenue, that Reliable decreased its fleet from six or seven tow trucks to four in 2024 (*id.* at 16); that the company had incurred significant legal fees to defend against lawsuits (*id.* at 14, 36); and that "Business ha[d] been slow" due to "less cars on the road" (*id.* at 41). According to Reliable, "[t]his testimony was not rebutted by Singh at the Confirmation Hearing." ECF 9 at 7.

Singh also declares that, during cross-examination of Rajpaul, "it quickly became apparent that the Debtor fabricated" its payroll expenses, which served as a basis for its projections. ECF 6 at 15. According to Singh, "the evidence at trial showed that during the four-month period relied upon by Debtor to formulate its projections the Debtor's average payroll expense was not $23,000 per month, but rather $14,750 for these four month [sic]." But, at the hearing, Reliable's counsel explained that, during the summer months, Reliable typically sees an increase in revenue, and thus expenses. ECF 9-1 at 65. He clarified, *id.*

> However, unfortunately, with that comes increased expenses because obviously, when -- if they're going on more runs, they're paying more for fuel, they're paying more for tolls, and they could be having higher payroll expenses. So while there is an expectation or a hope that, based on prior experience, which I think is a reasonable foundation for him to testify, that the next few months will be better because they're the busier months, there also is the expectation that come the fall, there's going to be a decrease. So there has to be an averaging out of the income.

After considering all the testimony, Judge Rice noted that he had "been troubled from the outset by this projection," emphasizing that "years three, four, and five are virtually identical." *Id.* at 79. Reliable's counsel responded that such uncertainty in the tow-trucking industry is

24

unavoidable, explaining that "part of that is a function of that it's difficult with this business to really know how things are going to flesh out." *Id.* at 80. He suggested, *id.*:

> I could craft something within the confirmation order to make it clear that in the event that a quarterly report comes in and shows higher disposable income than what is [sic] been paid out for that quarter, that the debtor has responsibility to pay that amount, that extra amount, out over to Mr. Katz for dispersal to unsecured creditors.
>
> It would seem to me that that's a positive way to assuage the Court's concerns in the event that the projections, especially in the later years of the plan, are off, and there's a substantial increase in business, and to ensure that the unsecured general creditors get an additional amount in the event, as Mr. Katz mentioned, the business turns around.

Therefore, despite Singh's challenge to the accuracy of Reliable's income projections, those projections are of no moment. As Reliable, the U.S. Trustee, the Subchapter V Trustee, and Judge Rice emphasized during the hearing of May 19, 2025, the Plan is not based on Reliable's projections. ECF 9-1 at 77–81; *see* ECF 9 at 7. Singh's distributions are based on "a pro-rata share of all ***actual disposable income*** of the Debtor." ECF 9-1 at 100 (emphasis added).

In other words, the amount Singh actually receives under the Plan turns entirely on Reliable's actual disposable income — not the projections Singh attacks in his Appeal. Singh's counsel acknowledged as much during the hearing and seemingly agreed to the Plan, admitting that he "was under the impression that this was a classic projected plan. . . ." ECF 9-1 at 83. But, he conceded that "clearly, if the confirmation order says, notwithstanding the projection, [Reliable is] prepared to pay out [its] actual disposable income to any and all unsecured creditors, that certainly bolsters and favors the debtor and makes my client happier." *Id.*

Accordingly, the Bankruptcy Court ruled that the Confirmation Order would require Reliable to file quarterly reports showing its actual disposable income during each quarter. ECF 9-1 at 86. Further, during the hearing, Judge Rice stated, *id*:

I do believe that the confirmation order, as has been suggested in the discussion at the latter part of the closing arguments, should contain language, Mr. Coyle, that you work out with all the parties that provides for -- makes clear that this is an actual disposable income plan commitment by the debtor, that the debtor will file, notwithstanding any other provisions of the plan, quarterly. Post-confirmation reports beginning ninety days or some -- you'll figure it out, okay, when to start. Whatever is reasonable. And that the debtor will make a, layman's terms, true-up payment to the Chapter V Trustee to reflect whatever additional amount should be paid to the unsecured creditor class based upon the actual performance of the company, as distinguished from the projected.

With respect to the "fair and equitable" standard imposed by Subchapter V, *In re Premier Glass Servs., LLC*, 664 B.R. 465, is instructive.  There, the court explained that "[t]o meet this requirement, the debtor must satisfy the court 'that the Plan adequately commits all disposable income to making payments for the life of the plan'" and "the projections are credible . . . before the court can confirm the plan." *Id.* at 470–471 (quoting *In re Channel Clarity Holdings, LLC*, No. 21-07972, 2022 WL 3710602, at *15 (Bankr. N.D. Ill. July 19, 2022)).  But, the court noted: "It is true that a small business debtor's projections deserve some deference, since looking into the financial future is not an exact science." *Id.* at 471 (internal citations and quotations omitted).  In short, "the disposable income test requires that the debtor will make its 'best efforts' (will commit its entire projected disposable income) to pay its creditors for the full duration of the commitment period." *Id.* at 472 (quoting *In re Pearl Res.*, 622 B.R. 236, 265-66 (S.D. Tex. Bankr. 2020)).  Of import, the court also said: "These requirements are statutory minimums, but because confirmation is within a judge's discretion and this list is non-exhaustive, 'a court may consider other relevant factors as well' when determining whether a plan is fair and equitable under 1191(c). *In re Premier Glass Servs., LLC*, 664 B.R. at 472 (quoting *Hamilton v. Curiel (In re Curiel)*, 651 B.R. 548, 561 n.7 (9th Cir. B.A.P. 2023)).

As Katz noted during the hearing, Reliable's "plan actually goes a little further." ECF 9-1 at 77.  He added, *id.*: "At the end of the description, it says after payments of classes 1 to 3, which

26

are the secured creditors, class 4 will receive a pro rata share of all actual disposable income of the debtor.  The Code doesn't require that.  The Code simply says, under 1191, that you have to be prepared to pay a projected net disposable income."

Indeed, the Plan, as confirmed, actually favors Singh by committing not just Reliable's *projected* disposable income (which, as discussed, Singh contends is inaccurate), but instead Reliable's *actual* disposable income.  And, in accordance with 11 U.S.C. § 1191(c)(2), Reliable certifies in Article III, titled "General Distributions Under Plan," that "[t]he value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period."  ECF 9-1 at 91.

As discussed, a "court abuses its discretion by drawing an erroneous legal conclusion or making a clearly erroneous factual finding."  *LeClair v. Tavenner*, 128 F.4th 257, 262 (4th Cir. 2025).  A court also abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises."  *Henry*, 673 F.3d at 291 (4th Cir. 2012).

In my view, the Bankruptcy Court did not abuse its discretion by confirming Reliable's Plan.  Indeed, in confirming the Plan, Judge Rice reasonably considered the rationale behind Reliable's disposable income projections and the uncertainty in the industry, weighed all the testimony, considered all the arguments, and based his decision on sound legal principles.  I also cannot ignore that Singh's arguments now are entirely contrary to concessions made by his counsel during the hearing of May 19, 2025.

Further, Judge Rice did not abuse his discretion in concluding that Reliable's commitment to provide its GUCs with the entirety of its actual disposable income meets Subchapter V's fair and equitable standard.  To be sure, "[a] plan is fair and equitable if it commits all of the debtor's

27

disposable income for the entire term of the plan to making plan payments . . . ." *In re Channel Clarity Holdings LLC*, No. 21BK07972, 2022 WL 3710602, at \*15 (Bankr. N.D. Ill. July 19, 2022). Here, Reliable plainly commits its actual disposable income to GUCs, like Singh, and confirms that the value of what they will receive under the Plan is "not less than the Debtor's projected disposable income for that same period," pursuant to 11 U.S.C. § 1191(c)(2)(B).

## IV. Conclusion

The Bankruptcy Court did not base its rulings on erroneous legal principles. Nor did its rulings rest upon incorrect factual findings. *Westberry*, 178 F.3d at 261. And, the court confirmed the Plan using sound reasoning. Its rulings do not constitute an abuse of its discretion.

For the foregoing reasons, I shall affirm the judgment of the Bankruptcy Court.

An Order follows, consistent with this Memorandum Opinion.

Date: April 13, 2026

/s/
Ellen Lipton Hollander
United States District Judge

28